UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CARLA F. KEPLER o/b/o B.J.P.,
        Plaintiff,

v.

NANCY A. BERRYHILL,
        Defendant.

---

**DECISION & ORDER**
17-cv-6566

## Preliminary Statement

Plaintiff Carla F. Kepler on behalf of her son, a minor, B.J.P. ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied his application for children's social security insurance benefits. See Complaint (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings. See Docket ## 9, 13. For the reasons explained more fully below, plaintiff's motion for judgment on the pleadings (Docket # 9) is **denied** and the Commissioner's motion for judgment on the pleadings (Docket # 13) is **granted**.

## Procedural History

Plaintiff protectively filed his application for social security benefits on March 24, 2014, alleging that he was disabled due to Schizophrenia Spectrum Disorder and ADHD. Administrative Record, Docket # 6 ("AR") at 15, 213. His application was initially denied in June 2014, and Administrative Law Judge Marie

1

Greener ("the ALJ") held a hearing on April 27, 2016, at which plaintiff and his mother testified with the assistance of counsel. AR at 15. On May 13, 2016, the ALJ issued an unfavorable decision, finding that plaintiff was not disabled. AR at 12-36. The Appeals Council denied plaintiff's request for review (AR at 1-4), and this appeal followed. Plaintiff and the Commissioner filed competing motions for judgment on the pleadings. Docket ## 9, 13.

## Background

Social Security Disability Benefits for Children: An individual under 18 years old will be considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must follow a three-step process to evaluate child disability claims. See 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. See id. at § 416.924(b). If so, the child is not disabled. If not, the ALJ proceeds to second step and determines whether the child has an impairment or combination of impairments that is "severe." In this context, "severe" means that the impairment causes "more than minimal functional limitations." Id. at § 416.924(c). If the child does not have a

severe impairment or combination of impairments, he or she is "not disabled." If the child does have a severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. at § 416.924(d). To do so, the ALJ must assess the child's functioning in six domains: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. Id. at §§ 416.926a(b)(1)(i)-(vi).

To "functionally equal the listings," the child's impairment(s) must cause "marked" limitations in two domains or an "extreme" limitation in one domain. Id. at § 416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. Id. at § 416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. Id. at § 416.926a(e)(3).

<u>ALJ's Decision</u>: At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity. AR at 18.

3

Proceeding to step two, the ALJ determined that plaintiff had the following severe impairments: learning disorder, adjustment disorder, mood disorder and anxiety. AR at 18. At step three, the ALJ found that these impairments, alone or in combination, did not meet or functionally equal a Listings impairment. AR at 19. Specifically, the ALJ found plaintiff had "less than marked" limitations in acquiring and using information, attending and completing tasks, interacting and relating with others and caring for himself. AR at 24-29. She found "no limitations" in moving and manipulating objects and health and physical well-being. AR at 27-29. Accordingly, the ALJ determined that plaintiff was not disabled within the meaning of the Act.

In so concluding, the ALJ gave "significant weight" to the opinions to consultative examiner Dr. Christine Ransom, "due to her expertise" and the "relative consistency of her opinions with the overall medical and educational evidence, including standardized intelligence testing and the opinions of [plaintiff's] teachers." AR at 22. The ALJ applied similarly "significant weight" to the opinion of state examiner Dr. Puttanniah due to that report's consistency with the overall evidence, including the opinion of Dr. Ransom. AR at 22-23. Likewise, the ALJ afforded "significant weight" to the questionnaires and educational reports completed by plaintiff's teachers and school district officials, "because they have

4

expertise in working with students with disabilities and because they are able to compare [plaintiff] to other students in his age group." AR at 23.

However, the ALJ gave "very little weight" to an April 2016 check-box medical source statement prepared by plaintiff's treating physician, Haidee I. Pidor, M.D., who concluded that plaintiff was markedly limited in each of the mental functional areas. AR at 23; see AR at 1506. In that opinion, Dr. Pidor diagnosed plaintiff with schizophrenia. The ALJ rejected this opinion because the opinion was "not supported by sufficient explanation" and was inconsistent with the medical and education evidence in the record. AR at 23. Specifically, the ALJ explained that Dr. Pidor's diagnosis of schizophrenia had been refuted by mental health providers at Strong Memorial Hospital and that Dr. Pidor is not a board-certified psychiatrist. AR at 23. Furthermore, the ALJ noted that Dr. Pidor's opinion was inconsistent with his own treatment records from April, July and October 2015 treatment notes, where Dr. Pidor wrote that plaintiff was doing better with his medication and in school. AR at 23.

## Discussion

Standard of Review: The scope of this Court's review of the ALJ's decision denying benefits to plaintiff is limited. It is not the function of the Court to determine *de novo* whether plaintiff is disabled. Brault v. Soc. Sec. Admin., Comm'r, 683

5

F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. Acierno v. Barnhart, 475 F.3d 77, 80–81 (2d Cir. 2007) (quoting Pollard v. Halter, 377 F.3d 183, 188 (2d Cir. 2004)). "Substantial evidence is more than a mere scintilla. . . . It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brault, 683 F.3d at 447–48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotations omitted).

This deferential standard of review does not mean, however, that the Court should simply "rubber stamp" the Commissioner's determination. "Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants [] affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted); see also Melville v. Apfel, 198 F.3d 45,

51 (2d Cir. 1999) ("Because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). However, no such duty exists "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history." Lowry v. Astrue, 474 F. App'x 801, 804 (2d Cir. 2012) (quoting Rosa v. Callahan, 168 F.3d 72, 29 n.5 (2d Cir. 1999) (finding that ALJ had no duty to develop record in child's benefits case where evidence was sufficient to show that claimant was not disabled)).

While not every factual conflict in the record need be explicitly reconciled by the ALJ, "crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983). Moreover,

> [w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her

7

disability determination made according to the correct
legal principles.

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

The Treating Physician Rule: Plaintiff argues that the ALJ improperly weighed the treating physician's opinion, which he says would have supported a finding of at least marked limitation[1] in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for self. The primary focus of plaintiff's argument is a three-page "treating source statement" dated April 27, 2006 and completed by plaintiff's treating physician, psychiatrist Haidee I. Pidor. The first section of the form contains a "check list" of various psychiatric symptoms and instructed Dr. Pidor to place a check mark next to any symptom which was "present." The second part of the form set forth the relevant limitations and instructed Dr. Pidor to select the "degree" to which plaintiff exhibited each specific limitation. The degree choices ranged from "none" to "extremely limited." AR at 1506-07. Dr. Pidor chose "markedly limited," the second most severe degree, as to all of the seven limitations listed on the form. On the last page of the form there is a space for "comments." Dr. Pidor wrote that plaintiff was a "9 yr, 11 mo. old child who had been hearing voices since the age

---

[1] A marked limitation is an impairment that "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 42 U.S.C. § 416.926a(e)(2).

8

of 2 yrs" but was "currently stabilized" by taking a prescription "mood stabilizer" and an "antipsychotic" medication. AR at 1508. Dr. Pidor diagnosed plaintiff as suffering from "unspecified schizophrenia spectrum" and bipolar disease with psychotic features." AR at 1505-08.

The treating physician rule, set forth in the Commissioner's own regulations, "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 416.927(d)(2)("Generally, we give more weight to opinions from your treating sources."). Where, as here, an ALJ gives a treating physician opinion something less than "controlling weight," she must provide good reasons for doing so. Specifically,

> [a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. Id. The regulations also specify that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." Id.

9

Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

However, even when a treating physician's statement is credited, it "cannot itself be determinative." Priel v. Astrue, 453 F. App'x 84, 86 (2d Cir. 2011) (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (finding ALJ properly declined to afford controlling weight to treating physician where the opinion was inconsistent with the other evidence in the record). Our circuit has instructed that "[w]hile the opinions of a treating physician deserve special respect, . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citing other sources); see Halloran, 362 F.3d at 32 ("Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."); Stanley v. Comm'r of Soc. Sec., 32 F. Supp. 3d 382, 386-388 (N.D.N.Y. 2014) (affirming ALJ's decision and rejecting report and recommendation because, even though the ALJ did not mention the treating physician, the treating physician's opinion was inconsistent with substantial medical evidence in the record

that made clear that child was not markedly limited in functional areas).

Analysis: Plaintiff contends that each of the ALJ's reasons for discrediting the treating physician's opinion are not sufficiently good reasons. Although the ALJ sets forth five inter-related reasons for discounting Dr. Pidor's opinion, the overarching reason is that Dr. Pidor's opinion is inconsistent with the medical record.[2]

There is no question here that plaintiff suffers from psychological problems which have resulted in some clear limitations. But the opinions expressed by Dr. Pidor in her Medical Source Statement do not find sufficient support in either Dr. Pidor's own treatment records or the other medical evidence in the record to justify reversal of the ALJ's view of the evidence. Put differently, while there is some contrary evidence, the ALJ's decision finding that plaintiff does not have marked limitations in two or more domains is supported by substantial evidence in the record. Accordingly, I am compelled to affirm the Commissioner's

---

[2] Two of the reasons provided by the ALJ are not persuasive in and of themselves. The ALJ gave less weight to Dr. Pidor's opinion because Dr. Pidor was not a board-certified psychiatrist. This reason is nonsensical. Dr. Pidor is a practicing psychiatrist and a medical doctor. There is no reason to doubt Dr. Pidor's expertise or her qualifications, particularly when the opinion the ALJ does credit is from a non-treating psychologist who, aside from not being a medical doctor, is also not board certified and only saw the plaintiff on a single occasion. The ALJ also discounted Dr. Pidor's opinion because of the type of form on which it was submitted. But "[t]here is no authority that a 'check-the-box' form," like Dr. Pidor's, "is any less reliable than any other type of form." Trevizo v. Berryhill, No. 15-16277, 2017 WL 4053751, at *8, n.4 (9th Cir. Sept. 14, 2017).

11

decision denying disability benefits.

As set forth above, a treating physician's opinion need not be given controlling weight when it is not well supported by medical findings and is inconsistent with other substantial record evidence. Micheli v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012) ("A physician's opinions are given less weight when his opinions are internally inconsistent.") (citing Michels v. Astrue, 297 Fed. App'x 74, 75 (2d Cir. 2008) (summary order)); Shaw, 221 F.3d at 134. That is the case here. Dr. Pidor's opinion that plaintiff was markedly limited in all of the seven childhood areas related to mental health (social functioning; personal functioning; concentration, persistence, or pace; acquiring and using information; attending and completing tasks; interacting and relating with others; caring for self) is not adequately supported by the record. See Rosario v. Comm'r of Social Sec., 2015 WL 5784911, at *7 (S.D.N.Y. Oct. 1, 2015) ("Instead, the ALJ rejected the treating physicians' assessments because they were outliers in a body of medical evidence showing that [the plaintiff] was not disabled."). The Court has reviewed Dr. Pidor's treatment notes and finds that, for the most part, they support the ALJ's findings. The records contain numerous references to plaintiff being "happy," "calm," "engaging," and "cooperative." Dr. Pidor or her staff often refer to plaintiff as "doing better" and his academic performance "improving greatly." AR at 484, 485, 540, 642, 680.

12

Although plaintiff admitted occasionally losing his temper and getting into trouble (AR at 540, 552, 560), it is difficult to see how these reports could overwhelmingly outweigh the frequent reports of plaintiff being "happy" and "positive." AR at 550, 552.

The treatment records do make clear that, since about the age of four, plaintiff had imaginary friends. But Dr. Pidor's treatment notes consistency describe the voices plaintiff heard as being "friends" who do not tell him to do bad things.[3] AR at 552. Notably, the vast majority of the reports of plaintiff being depressed, hearing voices, or behavior problems come from his mother, not plaintiff himself. See AR at 540, 642. The treatment records from Dr. Pidor or her staff simply do not confirm Dr. Pidor's opinion that plaintiff was markedly limited in each domain.

In addition, Dr. Pidor's opinion also conflicts with other medical and educational opinions in the record. For example, consultative examiner Dr. Ransom opined that plaintiff

> will have mild difficulty attending to, following and understanding age appropriate directions, completing age-appropriate tasks, adequately maintain appropriate behavior, respond appropriately to changes in the environment, learn in accordance to cognitive functioning, ask questions and request assistance at an

---

[3] However, Dr. Pidor did recognize that plaintiff may have denied hearing his friends to avoid going back to the hospital. AR at 638. Plaintiff's mom also reported that plaintiff turned on the stove while his mother was not home and started a small fire. AR at 560.

13

age appropriate manner, be aware of danger . . . ."

AR at 462. Similarly, the state evaluator, Dr. Puttanniah, opined that plaintiff would have a marked limitation in interacting with others, a less than marked limitation in attending and completing tasks, and no limitation in any other domain. AR at 71-72. Plaintiff criticizes the ALJ for adopting Dr. Puttanniah's opinion with respect to all the domains except for that of interacting with others, which he argues Dr. Puttanniah conveniently ignored. However, the ALJ explicitly addressed this portion of Dr. Puttanniah's report, stating that this particular finding was inconsistent with plaintiff's school records. AR at 27 ("Reviewing pediatric consultant Dr. Puttanniah opined that the claimant has marked limitations in the domain of interacting and relating with others . . . . However in April 2015, a school psychologist pointed out that claimant was a 'socially engaged student who generally follows the rules and is kind to others.'").

Plaintiff's admission to Strong Memorial Hospital and the resulting treatment notes also stand in contrast to Dr. Pidor's opinion. In May 2015, plaintiff was admitted to Strong Memorial Hospital for six days for psychological observation following a series of aggressive altercations and reported psychosis. AR at 653, 672. During the entirety of his stay, plaintiff appeared to be doing "very well" with "no indication of psychotic symptoms or mood dysregulation." AR at 672. One day into his stay, a

14

psychologist indicated that, "[b]ased on initial interactions, seems most likely to be atypical PTSD presentation and habitual pattern of negative/shock attention seeking with mom related to severe anxiety and mom's fears of schizophrenia, but we need more assessment." AR at 657. The next day, a psychiatry medical student following plaintiff stated that he "exhibits no psychotic features since his admission" and that his mother's concerns "can more likely be explained by a behavioral disorder." AR at 660. On May 23, 2015, plaintiff's grandparents – and occasional caretakers – visited plaintiff and told the nurse that "they have never witnessed [plaintiff] acting in the way the mother reports." AR at 665. They were concerned that plaintiff's behaviors are exacerbated by his environment and that he was "looking for attention from the mother," which may cause him to act out. AR at 665. Upon discharge, Dr. David Garrison acknowledged plaintiff's mother's concerns that plaintiff had been avoiding school, acting aggressively, and feeling paranoid. AR at 672. But he indicated that the "collaborative evaluation" of the medical professionals was that plaintiff "has developed an increasingly reinforced and elaborate imaginary family, which he has brought to his mom's attention more as he has avoided school and struggled with more separation anxiety." AR at 672. Finally, the medical professionals at Strong Memorial Hospital collaboratively concluded that "it is very premature to make diagnosis of

15

schizophrenia." AR at 672. Dr. Garrison indicated that he spoke with "outpatient psychiatrist" – presumably, Dr. Pidor – who was receptive to their formulation. AR at 672. These records from plaintiff's nearly weeklong stay at Strong Memorial Hospital also provide support for the ALJ's finding that Dr. Pidor's opinion was inconsistent with the rest of the record. Halloran, 362 F.3d at 32 ("Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."). It was appropriate for the ALJ to rely on these detailed records from plaintiff's hospital stay to demonstrate inconsistencies with plaintiff's treating physician's opinion, differences that justify giving diminished weight to the treating doctor. See Micheli, 501 F. App'x at 28-29 (affirming district court's declination to accord controlling weight to treating physician where there was substantial evidence in the record contradicting the treating physician's opinion and supporting the ALJ's decision).

Records from plaintiff's teachers and officials from plaintiff's school also support the ALJ's findings. In a May 2014 report, plaintiff's second grade teacher indicated that plaintiff

16

had no limitations in any of the domains. AR at 226-35. Another report by school psychologist Sara McLean in Spring 2015 recommended that, after extensive academic and intellectual testing, plaintiff be classified as a student with a Learning Disability. AR at 721. Ms. McLean documented what she believed to be low and very low scores in reading, writing, and math. AR at 720. A report from around the same time by school psychologist Rebecca Battle noted that "peer conflicts are generally rare for [plaintiff]" (AR at 684), that plaintiff's "fleeing behaviors at school have discontinued," (AR at 685) and he "responds well to the highly structured routine of school." AR at 685. Admittedly, she rated plaintiff's learning and school problems as falling in the "Clinically Significant range" and noted that plaintiff's adaptive skills were in the "At Risk range." AR at 685. Yet overall, Ms. Battle found plaintiff "to be a very sweet boy who has a complex constellation of learning needs, mental health difficulties and psychological stressors outside of school." AR at 685. She opined that plaintiff's "social behavioral functioning at school, although variable at times, appears to be responding to the interventions that have been employed in his current classroom." AR at 685.

Finally, no other medical or educational professional concluded, as did Dr. Pidor, that plaintiff would have marked limitations in each of the relevant domains. For example, there

17

is very little, if any, evidence in the record that would support Dr. Pidor's conclusion that plaintiff had marked limitations in caring for himself. The only educational records that tend to support Dr. Pidor's opinion of "marked" limitations come from plaintiff's fourth grade special education teacher in March 2016, and even that opinion does not conclude that plaintiff would have such limitations in all domains. Donna Corleto, who taught plaintiff English Language Arts and Math, noted that plaintiff would have problems functioning only in the acquiring and using information, attending and completing tasks, and caring for himself domains. AR at 333-40. Ms. Corleto indicated that plaintiff would have some serious problems acquiring and using information, but that his "many absenses [sic] have impacted this domain." AR at 334. Similarly, she reported that plaintiff would have between a slight and a very serious problem in attending and completing tasks. AR at 335. In this domain, however, Ms. Corleto explained that plaintiff "does not complete any homework assignments at home or return home/school correspondence." AR at 335. Finally, Ms. Corleto indicated that plaintiff would have between no problem and an obvious problem caring for himself. AR at 338. Although Ms. Corleto's report describes more serious functional limitations than many of the other reports, it cannot

be said to be <u>inconsistent with</u> the ALJ's ultimate findings.[4] Indeed, the ALJ found plaintiff to have some limitation, albeit less than marked limitations, in each of the domains Ms. Corleto observed plaintiff to have limitations in.

Despite plaintiff's arguments to the contrary, Dr. Pidor's opinion is, as the ALJ explained, inconsistent with the preponderance of the other medical and educational records in the record, including his own. Although there is some evidence to support Dr. Pidor's conclusions, the question here is whether there is <u>substantial evidence</u> for ALJ's decision to reject Dr. Pidor's opinion and conclude that plaintiff is not markedly limited in two of the functional domains. <u>Genier</u>, 606 F.3d at 49 (internal quotation marks and citation omitted) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence.") (quoting another source). I find there is. Consequently, the ALJ's decision that plaintiff is not disabled was supported by substantial evidence.

## Conclusion

For the reasons explained above, plaintiff's motion for

---

[4] Nor, for that matter, does it wholly support Dr. Pidor's findings. Some problems in these areas, as described by Ms. Corleto, do not necessarily equal the "marked" limitations Dr. Pidor opined about.

19

judgment on the pleadings (Docket # 9) is **denied** and the Commissioner's motion for judgment on the pleadings (Docket # 13) is **granted**.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: September 10, 2018
Rochester, New York